UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
10-20340-CIV-HOEVELER

ASTON MARTIN LAGONDA
OF NORTH AMERICA, INC.,

    Plaintiff,

v.

VA LEASING CORP. and
ROBERTO M. DE ARMAS,

    Defendants.
_____/

## ORDER AND REASONS

Before the Court are two motions filed by the plaintiff, Aston Martin. These motions are: (1) a motion to dismiss Roberto De Armas's counterclaim, and (2) a motion for summary judgment against both defendants. In addition, VA Leasing has filed a cross-motion for summary judgment against Aston Martin. The motions are fully briefed and the Court heard oral arguments on March 30, 2011.[1]

### I. Background

Aston Martin filed this is one-count declaratory judgment action September 8, 2010, asserting federal jurisdiction under 28 U.S.C. § 2201 and 28 U.S.C. § 1332. The pertinent facts are as follows. In April 2008, Roberto De Armas visited The Collection automobile dealership in Coral Gables to inquire about leasing an

---

[1] The hearing was set for Aston Martin's motion to dismiss, but during the hearing the Court elicited arguments concerning all pending motions.

"Aston Martin Vantage" luxury sedan. The Collection put De Armas in touch with a local leasing agency, VA Leasing Corp. After completing the necessary credit inquiries on De Armas, VA Leasing purchased the car from The Collection for $131,725.[2] VA Leasing then executed a forty-eight month lease contract with De Armas. Under the Lease Agreement, De Armas paid VA Leasing $21,326 up front, and agreed to pay about $2,300 per month for forty-eight months. At the end of the lease period, De Armas was entitled to exercise his "Purchase Option" under Paragraph 17 to buy the car for an additional payment of $54,000, if he wished.

De Armas began using the Vantage, but soon encountered mechanical problems. For example, the engine would mysteriously shut off while the car was moving. The Aston Martin dealership serviced the car but the problems continued. De Armas eventually sought relief under Florida's Lemon Laws and initiated an arbitration with the Florida New Motor Vehicle Arbitration Board ("the Board"), an administrative tribunal established by the Florida legislature to adjudicate disputes about defective vehicles. The Board held an evidentiary hearing June 23, 2010. The hearing was attended by representatives of Aston Martin, De Armas, and VA Leasing.[3] On July 2, 2010, the Board published a ten-page

---

[2] VA Leasing evidently financed the purchase with a loan from a lender who is not a party to this suit.

[3] At times, the defendants have suggested that VA Leasing was not party to the arbitration proceedings. The general manager of VA

"Decision of the Board" (which Aston Martin attached to the complaint). The Board determined that the car was, in fact, a "lemon" under Chapter 681 of the Florida Statutes, and Aston Martin was therefore obligated to buy it back.[4] Specifically, the Board ordered Aston Martin to refund to De Armas all the money he spent leasing the car (the down payment, twenty-five months of lease payments, various taxes and expenses, etc.), minus a statutory off-set of $17,413 (representing the value De Armas gained from driving the car for about a year). Using these calculations, the Board concluded that De Armas was entitled to recover $62,535 from Aston Martin.[5]

Further, the Board ordered Aston Martin to pay VA Leasing its expected profits on the lease. This lawsuit would have been avoided

---

Leasing testified at the hearing, and VA Leasing and De Armas share the same lawyer. It is clear from the Board's written order that it had "jurisdiction of the parties to and the subject matter of this case." See Decision of the Board, p. 4 ¶ 1, ECF No. 8-1. In any event, in paragraph 31 of VA Leasing's statement of undisputed facts [ECF No. 30], it admits that it participated in the arbitration proceedings.

[4] The Board also offered De Armas the option of a "replacement" remedy, but De Armas proceeded under the refund option.

[5] That amount was the calculation as of the date of the Board's decision. By now Aston Martin owes De Armas more. The Board wrote that the "amount of refund shall be increased by the amount of any additional monthly lease payments the Consumer may make to the lessor up to the date of repurchase of the vehicle." De Armas has continued making lease payments since the Board's order, and Aston Martin concedes these payments are refundable to De Armas (and, conversely, deductible from the amount Aston Martin owes VA Leasing).

3

if the Board calculated the exact dollar amount Aston Martin owed to VA Leasing, as the Board did for De Armas's refund. Instead, the Board wrote that VA Leasing was "entitled to a refund of the lease price less the aggregate deposit and lease payments previously paid to the lessor for the leased vehicle." Decision, p. 7, ¶ 8. The Board acknowledged that "lease price" is a legal term, defined by Section 681.102(9) of the Florida Statutes as:

> [t]he aggregate of the capitalized cost, as defined in s. 521.003(2), and each of the following items to the extent not included in the capitalized cost:
>
> (a) Lessor's earned rent charges through the date of repurchase.
> (b) Collateral charges, if applicable.
> (c) Any fee paid to another to obtain the lease.
> (d) Any insurance or other costs expended by the lessor for the benefit of the lessee.
> (e) An amount equal to state and local sales taxes, not otherwise included as collateral charges, paid by the lessor when the vehicle was initially purchased.

See Fla. Stat. §§ 681.102(9)(a)-(e).[6]

---

[6] Section 521.003(2), which is referenced in § 681.102(9), defines capitalized costs as:

> (2) "Capitalized cost" means the agreed-upon total amount which, after deducting any capitalized cost reductions, serves as the basis for calculating the amount of the periodic payment under the lease agreement. The capitalized cost may include, without limitation:
>
> (a) Taxes.
> (b) Registration fees.

4

Finally, the Board wrote on page 9 of its decision that:

> Upon compliance with this Decision by the Manufacturer [Aston Martin], the Consumer [De Armas] shall deliver possession of the subject motor vehicle to the Manufacturer and the titleholder [VE Leasing] shall deliver clear title to the vehicle to the Manufacturer. In the event the Manufacturer fails to comply within the time specified and fails to file an appeal as set forth below, the Consumer is directed to notify the Department of Legal Affairs, Lemon Law Arbitration Program.

Oddly, although the Board expressly instructed the parties' of their rights to appeal, no party appealed. Further, although the defendants now claim Aston Martin ignored the Board's order, neither defendant notified the Department of Legal Affairs of the

---

    (c)  License fees.
    (d)  Insurance charges.
    (e)  Charges for guaranteed auto protection or GAP overage.
    (f)  Charges for service contracts and extended warranties.
    (g)  Fees and charges for accessories and for installing accessories.
    (h)  Charges for delivery, service, and repair.
    (i)  Administrative fees, acquisition fees, and any and all fees or charges for providing services incidental to the lease agreement.
    (j)  The unpaid balance of any amount financed under an outstanding motor vehicle loan agreement or motor vehicle retail installment contract with respect to a motor vehicle used as a trade-in.
    (k)  The unpaid portion of the early termination obligation under an outstanding lease agreement.
    (l)  The first periodic payment due at the inception of the lease agreement.

non-compliance, as they should have done.

Pursuant to the Board's order, VA Leasing submitted a claim in writing to Aston Martin for $90,544, which VA Leasing claimed was the "lease price." This figure included the outstanding balance of De Armas's monthly payments ($41,762), plus the $54,000 VA Leasing hoped to earn if De Armas exercised his "Purchase Option."[7] Aston Martin disagreed with VA Leasing's inclusion of the $54,000 as part of the refundable "lease price." Aston Martin responded with a conditional offer that: once Aston Martin received, (1) the vehicle from De Armas, and (2) clear title from VA Leasing, Aston Martin would then pay $67,194 to De Armas, and $43,751 to VA Leasing.[8] Attempts to negotiate failed, and this federal lawsuit ensued. All sides now ask me to declare the meaning of the Board's order. The very narrow issue presented by Aston Martin's lawsuit is stated in Paragraph 34 of the complaint:

> Aston Martin respectfully seeks declarations that the Lease Price payable to VA Leasing does not require payment of the $54,000 for the Purchase Option demanded by VA Leasing.

Pl.'s Compl. ¶ 34. On September 24, 2010, Roberto De Armas filed a

---

[7] The figures don't equal $90,544 because there were various other costs and off-sets that aren't in dispute, including a $7,200 "interest refund" and others. Suffice it to say, the principle dispute concerns the $54,000 Purchase Option.

[8] The Board anticipated the opposite sequence of events: Aston Martin was first supposed to refund the money, then Aston Martin would receive the car and title, not the other way around. Aston Martin inexplicably ignored this aspect of the Board's decision.

one-count counterclaim, for Aston Martin's alleged violation of the Board's decision. On October 1, 2010, VA Leasing filed a two-count counterclaim: "Count I - Violation of the Decision" and "Count II - Declaratory Judgment." In filing their various declaratory judgment claims and counterclaims--all of which are based on conflicting interpretations of the Board's decision--the parties have presented this entire dispute to me for a judicial resolution.[9]

## II. Legal standards

### A.

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8(a)(2). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Though the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." Id. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

### B.

Rule 56(c) of the Federal Rules of Civil Procedure instructs

---

[9] This case should have been mediated. At the hearing, I offered to arrange mediation before a magistrate judge. The parties could not agree to mediate.

that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

### III. Aston Martin's motion to dismiss De Armas's counterclaim

#### A.

In his counterclaim, De Armas alleges that Aston Martin ignored the Board's order to repurchase the car, in breach of Florida law. The issue in the motion to dismiss is whether De Armas is required to assert these claims within the Lemon Law arbitration procedure, rather than in a civil lawsuit. De Armas purported to rely on the private right of action embedded in § 681.112(1) of the Florida Statutes, which provides that:

> A consumer may file an action to recover damages caused by a violation of this chapter. The court shall award a consumer who prevails in such action the amount of any pecuniary loss, litigation costs, reasonable attorney's

fees, and appropriate equitable relief.
Fla. Stat. § 681.112(1).[10] Although § 681.112(1) obviously contemplates a category of lawsuits that can take place outside the arbitration process, this category does not include claims based on Lemon Law theories of recovery. In <u>King v. King Motor Co. of Fort Lauderdale</u>, 780 So. 2d 937 (Fla. 4th DCA 2001), the Fourth District discussed the scope of damages recoverable under § 681.112, concluding that the statute allowed aggrieved car-buyers to seek damages outside the administrative "refund or replacement" process only in limited circumstances:

> Section 681.112 thus allows for a Chapter 681 damages case in circumstances where a refund or replacement is not an option. Such circumstances might include: (1) a warranty violation under section 681.103 which does not rise to the level of a "nonconformity" under section 681.104 because it does not substantially impair the use, value, or safety of a motor vehicle within the meaning of section 681.102(16); (2) a violation of a provision of Chapter 681 other than sections 681.104 or 681.103, such as section 681.114, pertaining to the resale of returned vehicles; (3) where the refund/replacement remedy does not fully compensate the consumer, <u>see Maserati Autos., Inc. v. Caplan</u>, 522 So. 2d 993, 996 (Fla. 3d DCA 1988); or (4) the situation presented in this case, where the consumer cannot take advantage of the refund/replacement option because he cannot

---

[10] In his counterclaim, De Armas pled that his case "arises out of the same transactions and occurrences that are the subject matter of the Plaintiff's claim." In other words, he implicitly suggests the Court has supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367(a), albeit without citation to any jurisdictional statute.

9

> furnish clear title to and possession of the motor vehicle.

Id. at 940-941. Thus, the question presented by the motion to dismiss is whether De Armas is asserting a cognizable claim for civil damages, or, rather, an arbitrable "refund or replacement" claim.

**B.**

The thrust De Armas's complaint is that he "incurred damages as a result of Aston Martin's failure to pay the amount ordered by the Decision." Specifically, he points out that he is still paying monthly lease payments on an useable Vantage.[11] This is clearly a claim based on a Lemon Law theory of recovery, which cannot be asserted outside of the arbitration process. To save his case, De Armas tries to fit his lawsuit into one of the exceptions discussed by the Fourth District in King v. King Motor Co. of Fort Lauderdale, by claiming separate damages in relation to driving a defective car that "randomly shut[s] off while being operated," thereby creating "an extremely dangerous condition which exposes De Armas to a substantial risk of bodily injury." Def.'s Opp., p. 6, ECF No. 12. These allegation do not appear in De Armas's pleadings,

---

[11] De Armas continues to make lease payments because he does not want to return the car until he receives the refund payment from Aston Martin. But Aston Martin won't pay the refund until it receives the title from VA Leasing. VA Leasing, meanwhile, claims the title is with the company that loaned VA Leasing the $131,725 to buy the car. VA Leasing claims it cannot afford to pay the loan without the $54,000. The result is a quintessential standoff.

and even if they did, they would fail to state a cognizable claim for relief.

If Aston Martin has not done so already, it is ordered to pay De Armas the specific dollar amount ordered by the Board. On top of that amount, Aston Martin is directed to reimburse De Armas for any lease payments he tendered to VA Leasing in the many months since the Board's order.[12] Aston Martin is directed to pay this money without delay, whether or not Aston Martin has received title to the vehicle. If De Armas seeks any additional relief, he must resort to the arbitration process of the Florida Lemon Laws, if it is still available. Even if there were an independent basis for maintaining federal jurisdiction over De Armas's remaining counterclaims (if there are any), the claims are foreclosed by § 681.112(1). See King v. King Motor Co. of Fort Lauderdale, 780 So. 2d 937 (Fla. 4th DCA 2001).

### IV. Cross-motions for summary judgment

The Board wrote that VA Leasing is "entitled to a refund of the *lease price* less the aggregate deposit and lease payments previously paid to the lessor for the leased vehicle" (emphasis added). The dispute on summary judgment is whether the lease price includes the $54,000. Aston Martin seeks declaratory judgment that VA Leasing is not entitled to recover the $54,000 because that sum

---

[12] In his motion papers, De Armas claimed that the total amount owed was $83,504. That was months ago. I urge the parties to work out the mathematics on their own.

represents the "Purchase Option" and is not part of the definition of "lease price." In its cross-motion for summary judgment, VA Leasing argues the opposite: that the $54,000 *is* part of the lease price. Having reviewed the Lease Agreement, the Board's decision, and Sections 521.003(2) and 681.102(9) of the Florida Statutes, the Court finds that Aston Martin's position is correct. Aston Martin's motion for summary judgment is granted, and VA Leasing's cross-motion for summary judgment is denied.

The Court recognizes the twinge of unfairness that arguably ensues from this outcome. When VA Leasing bought the Vantage for $131,725, it was expecting the car to generate two sources of revenue. The first source was the profit associated with the forty-eight month lease to De Armas. The second source was the residual re-sale value of the car *after* the forty-eight months ended. If De Armas chose to buy the car, the residual value was stipulated at $54,000. If De Armas wasn't interested, VA Leasing would still own a relatively new Aston Martin Vantage to sell on the used-car market to a different buyer. Either way, the car retained an obvious re-sale value after the lease ended.

As it turns out, the car was a dud, and the Board directed Aston Martin to repurchase it. This entailed a two-sided buy back transaction. On side one, Aston Martin was required to refund all of De Armas's payments, minus the value De Armas received from driving the Vantage for a year. This refund undeniably made De

12

Armas whole. Regarding the second side of the buy-back, however, VA Leasing submits that, if Aston Martin is only required to refund VA Leasing's "lease price"--and not required to pay the Purchase Option--then VA Leasing won't even recover the price it paid for the Vantage, and therefore will not be made whole.

Notwithstanding VA Leasing's grim financial representations, it appears VA Leasing will, in fact, recoup the $131,725 it paid for the Vantage. In connection with the lease to De Armas, VA Leasing received $21,326 at the lease signing, then thirty-four monthly installments of about $2,300 each, totaling nearly $100,000 in lease revenue VA Leasing has already collected. Aston Martin admittedly owes VA Leasing the final fourteen months rent, which equals $32,000. This brings VA Leasing's refund to around $132,000, which is almost exactly what VA Leasing paid.

But regardless, the Board did not require Aston Martin to pay VA Leasing for the re-sale value of the automobile. It would have been easy for the Board to estimate the residual value of the car, then include this amount in VA Leasing's refund. The Board did not do so. Rather, the Board ruled that VA Leasing is entitled to the lease price. VA Leasing has not plausibly explained how the $54,000 Purchase Option is part of the lease price, and it is therefore not part of the refund. If VA Leasing disagreed with the Board's analysis, it should have appealed. This Court is not the proper forum for that. Accordingly, it is hereby:

**ORDERED AND ADJUDGED:**

1. Aston Martin's motion for summary judgment [ECF No. 16] on its declaratory judgment claim is granted. VA Leasing's cross-motion for summary judgment [ECF No. 28] on its counterclaim for declaratory judgment is denied.

2. Aston Martin is ordered to promptly pay De Armas the amount required by the Board's decision, plus the amount of additional lease payments that De Armas tendered to VA Leasing subsequent to the Board's decision. Once De Armas receives the refund payment from Aston Martin, he must promptly return the vehicle to Aston Martin. Except for the relief provided by this paragraph, De Armas is not entitled to further relief from this Court. Aston Martin's motion to dismiss De Armas's remaining counterclaims (if there are any remaining) is granted [ECF No. 8].

**DONE AND ORDERED** in Miami, Florida, ~~May~~ July 21st, 2011.

_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE

14